[Civ. No. 21890. First Dist., Div. Two. Sept. 21, 1964.]

Adoption of BABY GIRL DUARTE, a Minor. CHARLES WILLIAM WALKER et al., Plaintiffs and Respondents, v. THOMAS C. WARNOCK et al., Defendants and Appellants.

Thomas C. Warnock and Deanna M. Duarte Warnock, in pro. per., for Defendants and Appellants.

Arthur Harris for Plaintiffs and Respondents.

SHOEMAKER, P. J.—Appellants Thomas and Deanna Warnock prosecute this appeal from orders granting the petition of respondents Charles and Sharyn Lou Walker to adopt a minor child, and denying the petition of appellant Deanna Warnock to withdraw the consent to adoption which she had previously executed.

This proceeding was commenced on January 16, 1963, when respondents Walker filed a petition to adopt Baby Girl Duarte, a minor child then less than one month old. In support of said petition, respondents filed a formal consent to adoption dated February 4, 1963, and signed by Deanna Duarte, the child's natural mother.

On July 12, 1963, Deanna Warnock, formerly Deanna Duarte, filed a petition to withdraw the consent to adoption on the ground that she and Thomas Warnock, the child's natural father, had married and were desirous of providing a home for their child.

Two reports, dated July 15, 1963, and September 24, 1963, were filed by the Alameda County Welfare Department. From the first report, it appears that Baby Girl Duarte was born on December 22, 1962, and was taken to live with the Walkers on December 25, 1962. Placement arrangements had been made by two doctors and an attorney, and all medical expenses in connection with the birth were paid by the Walkers. The natural mother, who was 14 years of age when her child was born, originally named Gyles Dean Parker as

the natural father. However, on May 9, 1963, she named Thomas Warnock as the natural father and he subsequently confirmed this fact. She and Warnock were married in Reno, Nevada, on May 22, 1963. While the Walkers were found to be suitable adoptive parents, the department recommended that their petition for adoption be denied without prejudice for the reason that the minor's legal status was in question.

The second report detailed Warnock's background and the circumstances of his marriage to Deanna Duarte. This report shows that Warnock, a man 28 years of age, possessed an extensive criminal record. At the time of his marriage to Deanna Duarte, she was a ward of the Juvenile Court and had been denied permission to marry Warnock because of his age and police record. Subsequent to the marriage, she stated that she had disobeyed the orders of the court and falsified her age to marry Warnock because she believed she was pregnant by him. Warnock stated that he had married one Willow Dean Goss in 1957 and that they were divorced in May 1959, in Gulfport, Mississippi. However, the Chancery Clerk of Harrison County, Mississippi, stated that although a bill for divorce had been filed by Willow D. Warnock against Thomas Warnock on May 15, 1959, in Gulfport, Mississippi, no final decree was ever rendered. The department concluded that the best interests of the minor child would not be served by her return to the natural mother, and recommended that the petition to withdraw consent to adoption be denied.

On September 27, 1963, the petition to withdraw consent to adoption came on for hearing, but neither Deanna Warnock nor her attorney appeared. When the trial judge inquired as to their absence, counsel for the Walkers stated that he had talked with Deanna Warnock's attorney on the preceding day and had been told that he did not intend to appear at the hearing and that he planned to dismiss the petition to withdraw consent to the adoption. The trial judge then contacted Deanna Warnock's attorney by telephone and was assured that he had been duly notified of the hearing, that neither he nor his client had any desire to be present, and that she had instructed him to dismiss the petition to withdraw consent to adoption.

The hearing proceeded and in accordance with the recommendation of the Alameda County Welfare Department, the court denied the petition to withdraw consent to adoption. The court then heard the petition for adoption and made its

order granting the Walkers' petition to adopt Baby Girl Duarte.

Appellants first contend that appellant Deanna was deprived of due process of law because her attorney did not represent her to the best of his ability during the proceedings before the trial court. This contention is obviously incapable of resolution on this appeal, since the record affords no factual basis for a finding that appellant's counsel either did or did not provide her with proper representation. Although it is true that he failed to appear at the hearing on September 27, 1963, he informed the court that his absence was the result of instructions from his client, who had told him to dismiss the petition to withdraw consent to adoption. Although appellant now suggests that her attorney failed to inform her of the hearing until the evening preceding it, and at that time "urged" her not to be present, the record lends no support to this contention. If there was in fact a misunderstanding between appellant and her attorney, or if she was deprived of a hearing by means of his fraudulent inducements, she could have obtained relief by moving to vacate the adverse orders on the ground of mistake (Code Civ. Proc., § 473; *Robinson* v. *Hiles* (1953) 119 Cal.App.2d 666 [260 P.2d 194]; *Bice* v. *Stevens* (1958) 160 Cal.App.2d 222 [325 P.2d 244], or by bringing an independent action to vacate the orders on the ground of extrinsic fraud. (*Flood* v. *Templeton* (1907) 152 Cal. 148, 156 [92 P. 78, 13 L.R.A. N.S. 579].)

Appellants next argue that the consent to adoption was invalid because it was not "signed before two subscribing witnesses and acknowledged before an authorized official of an organization licensed by the State Department of Social Welfare to find homes for children and place children in homes for adoption," as required by Civil Code, section 224m. This argument is wholly without merit for the reason that the code section relied upon is by its terms applicable to a written statement whereby the father or mother relinquishes the child "*to a licensed adoption agency for adoption.*" In the present case, appellant did not relinquish her child to an adoption agency but consented to the actual adoption of the child by the Walkers. She gave such consent on February 4, 1963, on which date Civil Code, section 226, authorized any person desiring to adopt a child to petition the superior court for that purpose, and further provided that "The consent of the natural parent or parents to the adoption by the petitioners must be signed in the presence of an agent of the State De-

partment of Social Welfare or of a licensed county adoption agency on a form prescribed by such department. . . ."[1]

An examination of the consent reveals that it was on a form provided by the Alameda County Welfare Department, that it was signed by "Deanna Mae Duarte," and that it was also signed and witnessed by "Carol Russ, Social Worker: Alameda County Welfare Department." Although it is not apparent from the face of the form that the Alameda County Welfare Department was a licensed county adoption agency, Welfare and Institutions Code, section 1640, provides that "any county agency" may, upon application by the county, become a licensed county adoption agency. Since it must be presumed that the transaction was "fair and regular" (Code Civ. Proc., § 1963, subd. 19) and that the law was obeyed (Code Civ. Proc., § 1963, subd. 33), it must accordingly be presumed that the Alameda County Welfare Department was a licensed county adoption agency. It follows that the consent was executed in strict compliance with Civil Code, section 226.

Appellants next assert that the "contract" whereby consent was given to the adoption is without force and effect because appellant mother received no consideration in return for relinquishing her child, because there is a "possibility" that her consent was obtained by fraudulent inducements, and because she was a minor when she entered into the "contract." Under Civil Code, section 226, a consent to adoption is not in the nature of a bilateral contract and a mother need not receive consideration in order to be bound by such consent. The assertion that the consent to adoption was fraudulently obtained finds no support in the record. The argument that a mother below the age of majority is not bound by such consent is equally unsound, since Civil Code, section 226, in effect at the time of this proceeding, provided that "A parent who is a minor shall have the right to sign a consent for the adoption of his or her child and such consent shall not be subject to revocation by reason of such minority."[2]

Appellants next contend that the Walker adoption was invalid because the natural father, Thomas Warnock, never relinquished his parental rights. Pursuant to Civil Code,

[1](Stats, 1961, ch. 1074, § 1.) Civil Code, § 226, was subsequently amended by Stats. 1963, ch. 1806, § 1, and the formal consent requirements are now set forth in newly enacted Civ. Code, § 226.1 (Stats. 1963, ch. 1806, § 3).

[2](Stats. 1961, ch. 1074, § 1. See now Civ. Code, § 226.1, subd. (d).)

section 224, a legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living. ■ In *Adoption of Laws* (1962) 201 Cal.App.2d 494 [20 Cal.Rptr. 64], the court held that an unmarried mother who gives such consent is acting both on her own behalf and as the father's agent. Where the parents are married subsequent to the giving of consent by the mother, legitimation does not retroactively operate to make the father's consent necessary ■ Although either the mother or father may thereafter petition to withdraw the consent given by the mother, the court may allow such withdrawal, pursuant to Civil Code, section 226a, only if it is reasonable in view of all of the circumstances and will be for the best interests of the child. Here, the reports of the Alameda County Welfare Department furnished ample support for the trial court's conclusion that withdrawal of consent would not be for the best interests of the child.

Appellants also assert that if the Walker adoption is upheld the child might later be prevented from inheriting from the adoptive parents, should a natural child result from their union. This argument is devoid of merit. Civil Code, section 228, provides that "A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation." ■ It is settled that ". . . an adopted child has a status with respect to its adoptive parent identical to that of a child born of such parent and succeeds to the estate of an adoptive parent in the same manner as a child born of such parent. . . ." (*Estate of Pierce* (1948) 32 Cal.2d 265, 268 [196 P.2d 1]] ; *Estate of Stanford* (1957) 49 Cal.2d 120, 135 [315 P.2d 681].)

Appellant Thomas Warnock has also filed a request that this court make findings to the effect that he obtained a valid divorce from his former wife in 1959 or 1960, and that his subsequent marriage to appellant was also valid. The record on appeal contains no evidence upon which such a finding could be made. ■ Even if the request for findings could be construed as an application for leave to produce evidence on appeal, such application should be denied where the evidence sought to be produced would afford no basis for a reversal of the judgment with directions to the trial court to enter judgment for the appellant. (*Estate of Schluttig* (1950) 36 Cal.2d 416, 423 [224 P.2d 695].)

For the reasons above stated, the request for findings as to the divorce of Thomas Warnock is denied, and the orders are affirmed.

Agee, J., and Taylor, J., concurred.